IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**United States of America,**

      **Plaintiff,**

**v.**                                                 Case No. 07-20007-01-JWL

**Aaron Harris,**

      **Defendant.**

## **MEMORANDUM & ORDER**

On September 28, 2007, defendant Aaron Harris pled guilty to conspiracy to distribute or possess with intent to distribute more than fifty grams of cocaine base. The factual basis of the plea agreement provided that Mr. Harris had admitted to agents after his arrest "that he had been distributing cocaine base for several years" and that although he did not know the total amount he had distributed, he "estimated it to be more than one kilogram." In the petition to enter plea of guilty and order entering plea, Mr. Harris again admitted that he distributed "approx. 1 kg of cocaine base." The presentence investigation report (PSR) filed with the court attributed more than 1.5 kilograms of cocaine base to Mr. Harris, triggering a base offense level of 36. Mr. Harris objected to that amount, contending that less than 1.5 kilograms of cocaine base should be attributed to him. At sentencing, the court sustained Mr. Harris's objection without opposition from the government such that Mr. Harris's base offense level was 34.[1]

---

[1] At sentencing, the government determined that it would not present evidence in opposition to Mr. Harris's objection in light of "recent developments" regarding the witnesses it planned to call to testify about the drug quantity attributable to Mr. Harris. The government, then,

Mr. Harris now moves the court pursuant to 18 U.S.C. § 3582(c)(2) and 28 U.S.C. § 2255 for a reduction in his sentence based on Amendment 750 and his counsel's failure to stipulate to or request that the court determine a fixed quantity of cocaine base attributable to Mr. Harris so that Mr. Harris could avail himself of prospective amendments to the drug quantity tables. He contends that the court should now attribute less than 840 grams of cocaine base to Mr. Harris and adjust his base offense level to 32 based on the revised drug quantity tables. As explained below, the motion is denied to the extent it is based on 18 U.S.C. § 3582(c)(2) and is dismissed to the extent it is based on 28 U.S.C. § 2255.[2]

As an initial matter, the government requests that the court enforce the "waiver of collateral attack" executed by Mr. Harris in his plea agreement, as it did when Mr. Harris previously moved for a reduced sentence under Amendment 709. Amendment 709, however, took effect prior to the date of Mr. Harris's sentencing. In contrast, Amendment 750 took effect more than 3 years after Mr. Harris's sentencing. The court, then, declines to find that Mr. Harris has waived his right to file the motion at issue here on the grounds that Mr. Harris could not knowingly and voluntarily waive his right to seek a sentence reduction under Amendment 750, which was not promulgated by the Sentencing Commission until 2011. *United States v. St. James*, 2013 WL 1345152, at *3 (N.D. Cal. Apr. 2, 2013); *United States v. Penn*, 2012 WL 3017865, at *3-4 (W.D. July 23, 2012) (a motion to modify a sentence pursuant to 3582(c)

---

conceded that it would not be able to present sufficient evidence to get the drug quantity over 1.5 kilograms of cocaine base.

[2] To the extent Mr. Harris's motion is also based, at least in part, on the Fair Sentencing Act of 2010, that statute provides him no relief as it does not apply retroactively to defendants, like Mr. Harris, sentenced before its August 3, 2010 effective date. *United States v. Cornelius*, 696 F.3d 1307, 1328 (10th Cir. 2012).

based on a retroactive change in the Guidelines is not a "collateral attack" on a conviction or sentence as traditionally understood; finding no waiver of right to seek reduction of sentence).

That being said, to the extent Mr. Harris's motion is made pursuant to 28 U.S.C. § 2255, the motion is dismissed as untimely. A defendant's § 2255 motion is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which establishes a one-year limitations period for federal prisoners seeking habeas relief. Under 28 U.S.C. § 2255(f), a criminal defendant may file a habeas petition one year from the latest of four circumstances:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Mr. Harris does not contend that subsections (2), (3) or (4) are applicable to him. As such, the one-year limitations period began to run on the date on which Mr. Harris's judgment of conviction became final.

Where a defendant files an appeal, his conviction becomes final "when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction." *Clay v. United States*, 537 U.S. 522, 525 (2003). Where a defendant does not file an appeal, his conviction becomes final on the date when the time for filing an appeal expires. *United States v.*

*Prows*, 448 F.3d 1223, 1227-28 (10th Cir. 2006). A criminal defendant must file a notice of appeal within fourteen days of judgment. Fed. R. App. P. 4(b)(1)(A).

Here, judgment was entered against Mr. Harris on May 5, 2008. He did not file a direct appeal. Thus, his judgment became final on May 19, 2008—fourteen days after entry of judgment. Mr. Harris's motion was filed in March 2013—long after the close of the one-year limitations period. He is now time-barred from filing a habeas petition in the absence of showing justification for equitable tolling of the one-year limitations period. Even assuming that Mr. Harris's claim were equitably tolled until Amendment 750 became retroactive, his § 2255 motion is nonetheless untimely as it was filed more than one year after the date the amendment became retroactive. Thus, Mr. Harris's § 2255 petition is dismissed as untimely.

The court turns, then, to consider whether Mr. Harris is eligible under § 3582(c)(2) for a reduction in his sentence in light of the modified guideline ranges for crack cocaine offenses under Amendment 750. Federal courts, in general, lack jurisdiction to reduce a term of imprisonment once it has been imposed. *Freeman v. United States*, ––– U.S. ––––, 131 S. Ct. 2685, 2690 (2011). "A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization." *United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997). Under limited circumstances, modification of a sentence is possible under 18 U.S.C. § 3582(c). That provision states that "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" may be eligible for a reduction, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

4

In one such statement, the Commission has specified that "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . [a]n amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B). To determine whether an amendment would have this effect, the policy statement explained,

> the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been in effect at the time the defendant was sentenced. In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.

U.S.S.G. § 1 B 1.10(b). This policy statement is binding on the federal courts. 18 U.S.C. § 3582(c)(2).

Applying this policy statement in the present case, the court concludes that Amendment 750 does not lower Mr. Harris's applicable guideline range. Although the court sustained Mr. Harris's objection at sentencing that less than 1.5 kilograms of cocaine base should be attributed to Mr. Harris, the factual record in this case cannot support the conclusion that less than 840 grams of cocaine base should be attributable to Mr. Harris.[3] In both the plea agreement and the plea petition, Mr. Harris admitted to distributing "more than" or "approximately" 1 kilogram of

---

[3] For this reason, even assuming that Mr. Harris's § 2255 claim was timely filed, the court would deny the motion on the merits. Mr. Harris cannot show any prejudice from his counsel's failure to stipulate to or request that the court determine a fixed amount of cocaine base attributable to Mr. Harris in light of Mr. Harris's admissions that he distributed more than or approximately 1 kilogram of cocaine base. In other words, Mr. Harris cannot demonstrate that his counsel would have been able to secure or obtain a drug quantity amount of less than 840 grams of cocaine base in light of Mr. Harris's admissions in the factual record of this case.

5

cocaine base—an amount that, under the revised drug quantity tables, results in a base offense level of 34 and, thus, no change to Mr. Harris's base offense level or, consequently, his Guidelines range. *See United States v. Bruner*, 2013 WL 1150265, at *6 & n.10 (10th Cir. Mar. 21, 2013) (affirming district court's conclusion that defendant was ineligible for sentence reduction even though sentencing court did not specify a fixed amount of cocaine base attributable to the defendant; court's supplemental drug-quantity calculation was based on previous findings and was within range to which the defendant had stipulated in his plea agreement). Moreover, the PSR, which the court placed into the official record of the case at the sentencing hearing, also noted Mr. Harris's admission that he distributed "approximately 1 kilogram of cocaine base." Given that Mr. Harris in his plea agreement estimated his distribution to have been in excess of one kilogram, the court construes "approximately" to mean at or about 1 kilogram, with any deviation more or less to have been small. There is no set of conceivable facts, then, that would permit the court to conclude that Mr. Harris is responsible for an amount of cocaine base as much as 160 grams less than 1 kilogram.

In sum, the factual record of this case reflects that the court must attribute at least 1 kilogram of cocaine base to Mr. Harris which, under the revised drug quantity tables, results in a base offense level of 34. Because 34 was Mr. Harris's base offense level at sentencing under the 2008 Guidelines, applying Amendment 750 does not result in a lower base offense level. Stated another way, when the court recalculates Mr. Wallace's base offense level under the amended drug quantity tables, the base offense level is the same as the base offense level calculated at the time of Mr. Harris's sentencing. Because Amendment 750 has no effect on Mr. Harris's base offense level, the court lacks authority to reduce Mr. Harris's sentence.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Harris's motion for sentence reduction (doc. 158) is **denied in part and dismissed in part**.

**IT IS SO ORDERED.**

Dated this 24th day of May, 2013, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge